FILED

APR 21 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ MM ___ DEP CLK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA

Alec Feinberg, Ph.D.,

**Pro Se Plaintiff**

-against-

Penguin Random House LLC,

**Defendant**

## COMPLAINT FOR TRADEMARK AND COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Civil Action No. 5:26-CV-00260-M

# 1. INTRODUCTION

1. Plaintiff Alec Feinberg is the creator and owner of the children's book series "Marshmallow Martians."
2. Plaintiff owns registered copyrights (Exhibit A) and trademarks (Exhibit B) associated with the Marshmallow Martians characters, artwork, and book series.
3. Defendant Penguin Random House LLC has published and distributed a competing children's book series using the name "Marshmallow Martians" and characters substantially similar to Plaintiff's protected works (Exhibits C and D).
4. Defendant's conduct constitutes copyright infringement, trademark infringement, and unfair competition under federal law.
5. Despite receiving multiple cease-and-desist notices (Exhibit E), Defendant continued to publish and distribute the accused works and resisted removal of listings on Amazon.
6. Defendant's conduct constitutes willful infringement, reverse confusion, and unfair competition causing ongoing irreparable harm.
7. Plaintiff brings this action to stop Defendant's willful infringement and recover statutory damages.

# 2. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the federal copyright and trademark laws of the United States.
9. Plaintiff's copyright claims arise under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.
10. Plaintiff's trademark (Exhibit B) and unfair competition claims arise under the Lanham Act, including 15 U.S.C. §§ 1114 and 1125(a).
11. Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a) because Defendant conducts business nationwide, including within this District, and the infringing

Case 5:26-cv-00260-M-RJ    Document 1    Filed 04/21/26    Page 1 of 15

works are offered for sale and distributed to consumers within this District through online retail platforms. Plaintiff resides in this District and has suffered harm in this District. Additionally, litigating in this District is reasonable and convenient, as Plaintiff resides here, and Defendant is a large business entity represented by counsel and capable of litigating in this forum. Requiring Plaintiff to litigate in a distant forum would impose a substantial burden, whereas this District is reasonably convenient for both parties.

# 3. PARTIES

12. Plaintiff Alec Feinberg, Ph.D., is an individual residing in Raleigh, North Carolina:

Alec Feinberg, Ph.D.
Plaintiff, Pro Se
9510 Centerwood Drive
Raleigh, NC, 27617
(617) 943-9034
AlecAFeinberg@gmail.com

13. Plaintiff is the creator and owner of the Marshmallow Martians intellectual property described in this Complaint.

14. Defendant Penguin Random House LLC is a limited liability company organized under the laws of New York with a principal place of business at:

Penguin Random House
1745 Broadway
New York, NY 10019

15. Defendant Penguin Random House LLC publishes, distributes, and sells books throughout the United States.

16. Upon information and belief, Deanna Kent is an individual residing in Kelowna, British Columbia, Canada, and is an author of the Marshmallow Martians books published by Defendant Penguin Random House LLC.

17. Upon information and belief, Neil Hooson is an individual residing in Kelowna, British Columbia, Canada, and is an author and illustrator of the Marshmallow Martians books published by Defendant Penguin Random House LLC.

18. Defendant Penguin Random House LLC is responsible for the publication, distribution, marketing, and commercial exploitation of the accused works (Exhibit C).

# 4. PLAINTIFF'S INTELLECTUAL PROPERTY

19. Plaintiff owns the following registered copyrights (Exhibits A):

- A-1: *The Twelve Marshmallow Martian and Friends* – VAU000296296, 1994-04-08
- A-2: *Marshmallow Martian Creatures* – VAu000219808, 12-30-1991

• A-3: *Copyrighted Drawings of First Marshmallow Martians* – VAu000219808, 12-30-1991
• A-4: *Marshmallow Martians Earthbound* – TXu000362786, 3-24-1989
• A-5: *Marshmallow Martian Stories* – TXu000629663, 4-8-1994

Plaintiff created the Marshmallow Martian characters and associated artwork beginning in 1989 and registered multiple copyrights beginning in 1991 and 1994 (Exhibit A), decades before Defendant's publication of its Marshmallow Martians book series beginning in 2023 (Exhibit C and F).

Plaintiff's Marshmallow Martian characters possess distinctive visual characteristics and personalities consistently used across multiple books and illustrations, making them protectable copyrighted characters (Exhibit A and D).

Plaintiff's Marshmallow Martian characters are distinctive, consistently depicted fictional characters that appear across multiple copyrighted works and illustrations (Exhibit A and D). These characters share recognizable visual features and creative expression, including marshmallow-shaped bodies, antennae with spherical tips, large expressive eyes, and floating alien forms (Exhibit A and D). Through repeated use in books, artwork, and related materials over many years, the Marshmallow Martian characters have developed a consistent visual identity recognizable to readers and constituting protectable expression under United States copyright law. The character "SQUISHY" is one such recurring character appearing within this series of works (Exhibit A and G).

20. Plaintiff also owns registered trademarks for the book series title "Marshmallow Martians." (Exhibit B)

**Exhibit B – Trademark Registrations**
B-1 MARSHMALLOW MARTIANS – U.S. Reg. No. 7,992,456, Ser. No. 99-044.020 (Class 16 – printed books)
B-2 MARSHMALLOW MARTIANS – U.S. Reg. No. 7,758,533 Ser. No. 98-552.512 (Class 9 – electronic publications)

21. Plaintiff has used the Marshmallow Martians marks and characters in commerce through books sold on Amazon and other online retailers. (Exhibit D)
22. Copies of Plaintiff's registrations are attached as Exhibits A and B.
23. Plaintiff's Marshmallow Martian characters possess distinctive visual features including marshmallow-shaped bodies, antennae with spherical tips, large expressive eyes, and flying alien forms. These distinctive features appear consistently across Plaintiff's works and make the characters recognizable to readers. (Exhibits A-1, D, and G).
24. Plaintiff originally conceived and created the Marshmallow Martians characters around 1989–1990 under the pen name "Alec Alexander" in connection with an elementary school science project with the Plaintiff's daughter involving marshmallow-based space characters and structures. The initial Marshmallow Martians creations were subsequently featured in a local newspaper and later developed into stories and illustrated books told to Plaintiff's children over many years. These original creations and subsequent works predate Defendant's publications by more than two decades and demonstrate Plaintiff's independent creation and development of the Marshmallow Martians characters and series. A copy of the narrative is attached as Exhibit H.

25. Plaintiff invested substantial time, creative effort, and financial resources in developing the Marshmallow Martians characters, artwork, and book series beginning in the late 1980s and continuing through publication and later updates. Defendant's infringing conduct has caused harm to Plaintiff's intellectual property, diminished the value of Plaintiff's works, and created marketplace confusion (see Count II) affecting Plaintiff's commercial visibility making it difficult to exploit the Marshmallow Martians brand.

# 5. DEFENDANT'S INFRINGING WORKS

26. Defendant had access to Plaintiff's works because Plaintiff's books were publicly available through Amazon and other retail platforms since at least 2000, prior to Defendant's publications. (Exhibit D).
27. Plaintiff's Marshmallow Martians published book series predates Defendant's books by more than two decades. (Exhibits C, D, and F).
28. Defendant adopted the identical title "Marshmallow Martians" on April 18, 2023 (Exhibit C and F) in connection with a competing book series targeting a similar audience, despite Plaintiff's prior works and intellectual property rights. The title "Marshmallow Martians" functions as a series trademark identifying the source of a continuing series of children's books created by Plaintiff.
29. Defendant's use of the identical series title in the same market and targeting the same children's age group (Exhibit F) is likely to cause consumer confusion regarding the source, sponsorship, or affiliation of the works. Defendant's use of "Marshmallow Martians" is confusingly similar to Plaintiff's registered mark in appearance, sound, meaning, and overall commercial impression.
30. Defendant has published and distributed a series of books using the name "Marshmallow Martians." (Exhibit C).
31. These books include: (Exhibit C)
    • Marshmallow Martians: Show and Smell
    • Marshmallow Martians: Earth School
    • Marshmallow Martians: Museum Sleepover
32. Defendant sells these works through Amazon and other commercial retailers. (Exhibits C and F)
33. Defendant's books feature characters that are substantially similar to Plaintiff's copyrighted characters, including a main character using the identical name "SQUISHY." (Exhibit G)
34. Plaintiff's copyrighted visual works include the character "SQUISHY," which appears in Plaintiff's registered artwork and stories forming part of the Marshmallow Martians series. (Exhibits A and D)
35. The character "Squishy" was originally introduced in Plaintiff's registered copyrighted text in 1989 (Exhibit A-5), which states, "Then came Squishy and Puffy the Martian twins." The character "Squishy" has consistently appeared in Plaintiff's subsequent books (Exhibit D), demonstrating that both the name and character have long been integral components of Plaintiff's copyrighted works and Marshmallow Martians universe.
36. Defendant's books include a main character also named "SQUISHY" displaying substantially similar visual features. (Exhibit G-1)
37. Defendant's use of the identical character name "SQUISHY," combined with substantially similar character designs, supports an inference of copying and increases the likelihood of consumer confusion. (Exhibit G)

38. Defendant's characters include marshmallow-shaped alien figures with features such as spherical antenna tips, large eyes, and simplified cartoon-style proportions. (Exhibit G).

39. These features appear in side-by-side comparisons with Plaintiff's characters as shown in Exhibit G. Legal analysis regarding substantial similarity and copyright infringement is addressed in Count I below.

40. Defendant has also published a YouTube video demonstrating how to draw the character "Squishy," describing a marshmallow-shaped body and antennae with spherical tips, features corresponding to the distinctive elements of Plaintiff's Marshmallow Martian characters. (Exhibit K)

41. Defendant's use of the Marshmallow Martians name and substantially similar characters falsely suggests that Defendant's books originate from, are affiliated with, or are authorized by Plaintiff. (Exhibits C and G)

42. Consumers encountering Defendant's books are likely to believe that the works are associated with, authorized by, or derived from Plaintiff's Marshmallow Martians series.

43. Plaintiff and Defendant sell children's books for Grades 1–4 through the same retail channels, including Amazon and national booksellers, and target the same consumer audience. (Exhibits C, D, and F).

44. Defendant is a major commercial publisher with extensive editorial and legal review processes, making it likely that Defendant had constructive and/or actual knowledge of Plaintiff's prior works before publishing the accused series.

45. Distinctive fictional characters are protected by copyright law, and unauthorized use of such characters can constitute infringement.

46. Searches for "Marshmallow Martians" on major online retail platforms, including Amazon, prominently display Defendant's books while Plaintiff's books do not appear in initial search results. (Exhibit I-1)

47. Google AI-generated search results for "Marshmallow Martian" prominently reference Defendant's books while omitting Plaintiff's works, contributing to consumer confusion and diversion. (Exhibit I-2)

48. Google search results similarly display Defendant's books in response to searches for "Marshmallow Martians," including AI-generated summaries that may misidentify authorship or source. (Exhibit I-2)

49. By dominating search results in both retail search environments (such as Amazon) and general internet search environments (such as Google), Defendant's infringing series diverts consumers searching for Plaintiff's Marshmallow Martians series to Defendant's competing works, initial interest confusion, causing marketplace confusion, and reverse confusion. (Exhibits I-1, I-2).

# 5.1 Substantial Similarity of Characters

50. The characters depicted in Defendant's books are substantially similar to Plaintiff's copyrighted Marshmallow Martian characters, as described above. (Exhibits A-1 and G).

51. Google search results similarly display Defendant's books in response to searches for "Marshmallow Martians," including AI-generated summaries that may misidentify authorship or source. (Exhibit I-2)

52. The similarities include the distinctive visual and expressive elements identified in Paragraph 35, which appear consistently in Plaintiff's works and are reproduced in Defendant's characters.

53. Defendant's books also include a character named "SQUISHY," which shares the same name and similar visual appearance as Plaintiff's previously created character "SQUISHY." (Exhibit G-1).

# 6. NOTICES OF INFRINGEMENT

54. Plaintiff sent multiple cease-and-desist communications to Defendant beginning on October 4, 2024 through November 23, 2025. (Exhibit E Summary; Detailed Correspondence, Exhibit L).
55. Plaintiff initially notified Defendant of Plaintiff's registered copyrights and prior use of the Marshmallow Martians mark, including copies of registered copyright materials and original drawings. (Exhibits L-1, L-3).
56. Plaintiff further notified Defendant of prior trademark rights and common-law trademark protection under the Lanham Act. (Exhibit L-1).
57. Defendant responded to Plaintiff's correspondence but declined to cease its infringing conduct. (Exhibits L-2, L-4, L-6, L-8, L-10).
58. Plaintiff subsequently obtained registered trademarks and notified Defendant of active trademark registrations, again requesting that Defendant cease and desist. (Exhibits L-7, L-9).
59. Defendant rejected Plaintiff's trademark rights and continued to assert its right to use the "Marshmallow Martians" name. (Exhibits L-8, L-10).
60. Defendant acknowledged receipt of Plaintiff's correspondence through its legal counsel, Alena Perszyk, Penguin Random House LLC, 1745 Broadway, New York, NY. (Exhibits L-2, L-4, L-6, L-8, L-10).
61. Plaintiff also notified Defendant that Defendant's use of the "Marshmallow Martians" mark created marketplace confusion and constituted unfair competition. (Exhibits L-1, L-5; see also Exhibits I and J). Plaintiff further notified Defendant that Defendant's books were diverting consumers and interfering with Plaintiff's search visibility, stating in correspondence that "your books block my sales… one cannot even find my Marshmallow Martian website anymore in a search." (Exhibit L-5). This notice placed Defendant on actual notice of confusion and ongoing harm.
62. Plaintiff further notified Defendant that Defendant's characters were substantially similar to Plaintiff's copyrighted Marshmallow Martian characters and artwork. (Exhibits L1, L3. L5, L7)
63. Plaintiff also informed Defendant that Defendant's Marshmallow Martian characters were substantially similar to Plaintiff's copyrighted characters (Exhibits L1, L3. L5, L7) and that Defendant's use risked diluting Plaintiff's distinctive artistic style and goodwill developed over decades.
64. Defendant asserted that its authors, illustrators, and editors had no prior knowledge of Plaintiff's works (Exhibit L-4), despite Plaintiff's books being publicly available on Amazon since approximately 2000 and Plaintiff's copyrights and trademark filings being publicly searchable. Such information would have been discoverable through reasonable due diligence commonly performed in publishing. Additionally, searches on Amazon or Google for "Marshmallow Martians" would have identified Plaintiff's books and related works prior to Defendant's publication. (See Exhibits D, I, and J). Furthermore, it is standard practice for authors and publishers to conduct title searches to ensure uniqueness, making it implausible that Defendant undertook development and publication of a book series using the identical title without conducting any research.

65. Search results on Amazon and Google now prominently display Defendant's books under the "Marshmallow Martians" name, while Plaintiff's books are difficult to locate or do not appear in initial results, demonstrating marketplace confusion, diversion, and harm to Plaintiff's goodwill. (Exhibits I and J).

66. Plaintiff's cease-and-desist communications were repeatedly acknowledged by Defendant (Exhibits L2, L4, L6, L8, L10), yet Defendant continued publishing and distributing the accused works.

67. After Plaintiff submitted a trademark complaint to Amazon, Defendant's listings were initially removed.

68. Amazon later notified Plaintiff that it had reviewed the matter and reinstated Defendant's listings. (Exhibit L-11).

69. Prior to reinstatement, Defendant indicated that it intended to contact Amazon regarding Plaintiff's complaint. (Exhibit L-10).

70. Following reinstatement, Defendant continued distribution of the accused works.

71. Defendant's conduct has caused and is likely to continue to cause damage to Plaintiff's goodwill, brand identity, and ability to control use of the Marshmallow Martians trademark, and has diverted consumers searching for Plaintiff's works to Defendant's competing products. (Exhibits I-1, I-2, J-1, J-2, J-3).

72. Despite repeated notice of Plaintiff's intellectual property rights, Defendant continued to publish, distribute, and sell the accused works using the identical "Marshmallow Martians" title and substantially similar characters. Defendant's continued conduct after notice constitutes willful infringement. (Exhibit L).

73. Defendant's infringing conduct is ongoing and continuing, including continued online distribution, marketing, and sale of the accused works across multiple platforms.

# COUNT I
# COPYRIGHT INFRINGEMENT

74. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

75. Plaintiff owns valid copyrights in the Marshmallow Martian characters and artwork. (Exhibit A).

76. Defendant reproduced, distributed, and published works based on Plaintiff's copyrighted characters without authorization, as described in Section 5. Defendant's works constitute unauthorized derivative works based upon Plaintiff's copyrighted characters and artwork.

77. Plaintiff's works feature a cohesive and recurring set of characters known as "Marshmallow Martians," defined by a consistent visual design language centered on marshmallow-based facial forms combined with antenna structures.

78. Across Plaintiff's works, these characters share identifiable expressive traits, including marshmallow-derived head and facial configurations, prominent eye placement, and integrated antenna elements, creating a unified and recognizable character family.

79. Within this framework, Plaintiff's characters "Squishy" and "Puffy" are further distinctly delineated by a specific configuration in which a single vertical marshmallow form constitutes both the face and body, with integrated limbs extending directly from that form and enlarged eyes forming a dominant facial feature.

80. Defendant's works are substantially similar to Plaintiff's protected works, including the Marshmallow Martian characters and the character "SQUISHY." (Exhibit G-1).

81. Plaintiff's longstanding use of the "Squishy" character since at least 1989, as alleged in Paragraph 37, further supports an inference of copying and undermines any claim of independent creation.

82. Defendant's use of the identical character name "SQUISHY" in connection with a substantially similar character design strongly supports an inference of copying, as such similarity is unlikely to be coincidental.

83. Plaintiff's works have been publicly available through books and online retail platforms since at least 2000. Upon information and belief, Defendant had access to Plaintiff's works prior to publishing the accused series. The similarities between the works are sufficiently specific and numerous that independent creation is implausible. (Exhibit G-1, G-2).

84. The particular combination, selection, and arrangement of elements of Squishy and Puffy— including the use of a single marshmallow form as both head and body, specific proportional relationships, and integrated anatomical features—constitutes original expression and is not a generalized or stock depiction of alien characters.

85. Defendant's works exhibit substantial similarity to Plaintiff's copyrighted characters. As shown in Exhibits G-1 and G-2, these similarities include:

   a) Overall Silhouette
   • Plaintiff: Cylindrical, marshmallow-shaped body forming both head and torso, with no neck separation, as depicted in Plaintiff's characters Squishy and Puffy. (Exhibit G-1)
   • Defendant: Similar cylindrical marshmallow body with head/torso integration

   b) Eyes
   • Plaintiff: Large, rounded eyes positioned in upper facial area with wide spacing and dominant facial presence (Exhibit G-1)
   • Defendant: Similarly large eyes with comparable placement and proportional emphasis

   c) Mouth / Expression
   • Plaintiff: Simple curved smile positioned below eyes in central facial area
   • Defendant: Similar simplified smiling expression in comparable position

   d) Antennae
   • Plaintiff: Two antennae that are somewhat curved looking emerging from top of head, each ending in rounded marshmallow-like spheres
   • Defendant: Two antennae also somewhat curved looking with similar placement and spherical terminal ends

   e) Arms / Structure
   • Plaintiff: Arms extending directly from cylindrical marshmallow body without distinct shoulder structure
   • Defendant: Similar direct-marshmallow body arm attachment without defined shoulder separation

   f) Movement
   • Plaintiff's characters are depicted as flying
   • Defendant's characters are similarly depicted as flying

   g) Overall Impression
   • Both designs present simplified, soft-bodied marshmallow characters with similar facial

proportioning and feature placement, creating a comparable overall visual impression to an ordinary observer, notwithstanding minor stylistic differences.

86. Defendant's works appropriate this same expressive framework, including marshmallow-based character construction, antenna features, and a substantially similar single-form body configuration, thereby copying Plaintiff's protected expression.

87. The similarities between the works arise from the appropriation of Plaintiff's original selection and arrangement of expressive elements and are not limited to unprotectable ideas or general concepts.

88. While there are minor stylistic differences in rendering, the combination, arrangement, and proportional relationships of these elements create a substantially similar overall visual impression to an ordinary observer under the applicable substantial similarity standard. (Exhibit G-2).

89. Plaintiff does not claim protection over abstract concepts such as extraterrestrials or soft-bodied figures, but over the concrete and consistent expression embodied in these marshmallow characters and their defining visual structure.

90. Accordingly, Plaintiff's claims are grounded in protectable expression and are not barred by the principles set forth in *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930).

91. The protectable similarity arises not only from individual elements, but from the selection, arrangement, and combination of these elements, which together create a distinctive and protectable marshmallow character design.

92. Defendant copied original, protectable elements of Plaintiff's works, including the distinctive character design, expression, and combination of features embodied in Plaintiff's Marshmallow Martians characters, including specific visual arrangements, proportions, and expressive design elements that together create a substantially similar overall appearance, notwithstanding minor stylistic or personality differences. (Exhibit G-1, G-2).

93. The accused works are substantially similar to Plaintiff's protected expression such that an ordinary observer would recognize the works as having been appropriated from Plaintiff's copyrighted Marshmallow Martian material. (Exhibit A).

94. Plaintiff's copyrighted character "Silly Character Spacey" is substantially similar to Defendant's "Silly Character Snug," further supporting an inference of copying and unauthorized derivative use. (Exhibit G-2).

95. Although Defendant's character incorporates minor stylistic differences, such as more three-dimensional eyes, thicker arms, or variations in mouth expression. However, these differences are superficial and do not alter the overall structure, proportions, and arrangement of protectable elements. Defendant's character appears as a derivative adaptation of Plaintiff's "Squishy" character and would be recognized by an ordinary observer as substantially similar to Plaintiff's protected character design. (Exhibits A, G)

96. The derivative nature of Defendant's characters becomes clearer when compared with marshmallow-themed alien characters created by other illustrators that do not resemble Plaintiff's protected designs. Examples of such non-infringing marshmallow alien characters are shown in Exhibits G-3 through G-6.

97. Exhibit G-3 depicts a marshmallow-themed alien featuring a vertical marshmallow-shaped body forming both head and torso, but with substantially different visual characteristics, including smaller eyes, differently shaped arms, and thick, non-curved antennae protruding from a hat-like feature. These differences create a distinct overall appearance that an ordinary observer would recognize as outside Plaintiff's Marshmallow Martian universe.

98. Exhibit G-4 and G-5 similarly displays a marshmallow-shaped character lacking antennae, with small different eyes and other differing features, resulting in a substantially different overall look and feel despite the shared marshmallow-like form.

99. Exhibit G-6 presents a markedly different marshmallow alien featuring a single eye, a differently shaped mouth, string-like arms and legs, and antennae distinct from Plaintiff's Marshmallow Martian characters. These design choices further illustrate how marshmallow-themed alien characters may be created without resembling Plaintiff's protected characters.

100. These examples demonstrate that numerous alternative marshmallow-themed character designs are readily available and commonly used by other illustrators. Unlike these non-infringing designs, Defendant's characters adopt the specific combination and arrangement of expressive elements distinctive to Plaintiff's Marshmallow Martian characters.

101. Accordingly, Exhibits G-3 through G-6 further support the inference that Defendant's characters were derived from Plaintiff's protected designs rather than independently created.

102. The substantial similarity between Plaintiff's and Defendant's works is evident (Exhibit G) in the overall "total concept and feel," including the shared Marshmallow Martian universe featuring marshmallow-based extraterrestrial characters with integrated anatomical structures, antenna configurations, and a unified soft-bodied visual identity. An ordinary observer viewing the works in context would recognize Defendant's marshmallow characters as appropriating the distinctive visual essence of Plaintiff's protected characters. Courts have recognized that substantial similarity may exist despite stylistic differences where the overall "total concept and feel" is similar. *See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977).

103. Defendant's infringement has been willful. Defendant had access to Plaintiff's works prior to publication and continued publishing and distributing the infringing works after receiving notice of Plaintiff's intellectual property rights. (Exhibits L-2, L-4, L-6, L-8).

104. Defendant's infringement has caused and continues to cause irreparable harm to Plaintiff, including loss of control over Plaintiff's copyrighted characters, dilution of Plaintiff's creative expression, and damage to the market value of Plaintiff's works.

# COUNT II – TRADEMARK INFRINGEMENT AND INTERNET CONFUSION

105. Defendant's use of the identical "Marshmallow Martians" mark has created a substantial likelihood of consumer confusion in commerce, including through internet search engines, online marketplaces, and retail platforms through which consumers encounter the parties' goods, as set forth below:

**Internet and Online Marketplace Evidence of Confusion**

**Google AI Search Visibility**

**(a)** Google AI-generated search results for "Marshmallow Martians" identify Defendant's "Marshmallow Martians" book series while failing to display Plaintiff's prior book series in initial results. (Exhibit I-1).

**(b)** Google search outputs reference MarshmallowMartians.net as associated with Defendant's books, despite Plaintiff's ownership and operation of the website. (Exhibit I-2).

## Retail Platform Search Results

**(c)** Amazon search results for "Marshmallow Martians" prominently display Defendant's books in initial results, while Plaintiff's books do not appear absent more specific search terms. (Exhibit J-1).

**(d)** Both parties' books are sold through Amazon, where Defendant's books currently appear at significantly higher sales rankings. For example, on April 16, 2026, Plaintiff's book had an Amazon Best Sellers Rank of approximately 12,329,417, while Defendant's book had a Best Sellers Rank of approximately 504,637. This disparity in ranking increases the likelihood that consumers searching for Plaintiff's mark encounter Defendant's competing works and rarely locate Plaintiff's books. (Exhibits I and J).

**(e)** Google search results for "Marshmallow Martians" display Defendant's books alongside or in place of Plaintiff's works in a manner that obscures source identification. (Exhibit J-2).

**(f)** Google search results for "Marshmallow Martian" display Defendant's books across multiple pages of results, further limiting consumer exposure to Plaintiff's works. (Exhibit J-3).

106. The foregoing evidence reflects how consumers encounter the parties' goods in commerce and supports a likelihood that consumers searching for Plaintiff's "Marshmallow Martians" series will be directed to Defendant's competing works without awareness of the source distinction. (Exhibits I and J).

107. The likelihood of confusion is further supported under the multifactor test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), including:

**(a)** Strength of the mark: Plaintiff's "Marshmallow Martians" mark is distinctive and has been used in commerce for decades;

**(b)** Similarity of the marks: Defendant uses the identical "Marshmallow Martians" designation;

**(c)** Proximity of the products: Both parties sell children's books targeting similar audiences;

**(d)** Overlap in marketing channels: Both parties distribute through Amazon and online retail platforms;

**(e)** Evidence of confusion: The manner in which the parties' goods appear in search engines and online marketplaces supports an inference of consumer confusion;

**(f)** Defendant's knowledge: Defendant had access to Plaintiff's works prior to publication;

**(g)** Intent: Defendant continued use of the mark after receiving notice from Plaintiff;

**(h)** Likelihood of expansion: Both parties operate within the same children's book market.

108. Defendant's actions constitute trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), because Defendant's use of the identical mark is likely to cause confusion, mistake, or deception as to source, sponsorship, or affiliation.

109. The confusion described herein includes initial interest confusion, reverse confusion, and confusion arising from consumer exposure to the parties' goods through internet search engines and online marketplaces.

110. Courts in the Second Circuit apply the Polaroid factors to assess likelihood of confusion. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).

111. Courts recognize reverse confusion where a larger junior user overwhelms a smaller senior user, leading consumers to incorrectly believe the senior user is affiliated with the junior user. *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988).

112. Courts have also recognized that confusion arising from internet search engines and online marketplaces may contribute to actionable trademark infringement. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999).

113. Internet search engines and online retail platforms such as Amazon and Google are primary channels through which consumers discover and purchase books and therefore play a central role in how consumers identify the source and origin of literary works in the marketplace.

# COUNT III
FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
(15 U.S.C. § 1125(a))

114. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

115. Defendant has used the designation "Marshmallow Martians" and substantially similar characters in connection with books offered for sale in commerce. (Exhibit C).

116. Defendant's use of the "Marshmallow Martians" name and substantially similar characters is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods.

117. Defendant's conduct has caused and is likely to continue to cause consumer confusion, reverse confusion, and initial interest confusion in the marketplace, including confusion arising from internet search results and online marketplace listings. (Exhibits I and J).

118. Defendant's actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a). (Exhibits C, I, J).

119. Defendant's conduct has been willful, deliberate, and in disregard of Plaintiff's rights, including continued use of the "Marshmallow Martians" mark after notice of Plaintiff's intellectual property rights. (Exhibits L-2, L-4, L-6, L-8, L-10).
120. Defendant's widespread distribution of the accused works across internet platforms, online retailers, and search engines has created ongoing and continuing harm to Plaintiff's trademark rights, goodwill, and brand identity. The persistent nature of online distribution increases consumer confusion and makes remediation difficult without injunctive relief.
121. **In summary**, Defendant willfully appropriated Plaintiff's longstanding Marshmallow Martians intellectual property (Exhibit H), including Plaintiff's trademarks and copyrighted characters, and published competing works using identical and substantially similar elements. Defendant's widespread distribution and prominence in modern search engines and online marketplaces have made it increasingly difficult for consumers to locate Plaintiff's original works, resulting in diversion, reverse confusion, and ongoing harm to Plaintiff's intellectual property rights.
122. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including loss of goodwill, consumer confusion, and irreparable harm. Plaintiff has no adequate remedy at law for the continuing harm caused by Defendant's conduct. Monetary damages alone cannot fully compensate Plaintiff for the loss of goodwill, brand identity, and control over Plaintiff's intellectual property.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff;

B. Statutory damages pursuant to 17 U.S.C. §504(c), including enhanced damages for willful infringement of up to $150,000 per infringed work.

C. Plaintiff seeks damages, including Defendant's profits, Plaintiff's actual damages, and injunctive relief for infringement of Plaintiff's registered trademarks, including registrations covering International Class 009 (downloadable publications) and International Class 016 (printed books), pursuant to the Lanham Act, including 15 U.S.C. § 1117(a), and, in an exceptional case, treble damages, as well as disgorgement of profits attributable to willful infringement believed to exceed the jurisdictional minimum for this Court

D. Issue a **permanent injunction** preventing Defendant from further use of Plaintiff's intellectual property;

E. Award Plaintiff the **costs of this action**;

F. Grant such other relief as the Court deems just and proper;

G. Plaintiff reserves the right to **amend this Complaint** as additional evidence becomes available through discovery.

# JURY DEMAND

Plaintiff demands a **trial by jury** on all issues so triable.

---

# SIGNATURE

Dated: April 14, 2026
Respectively Submitted

*Alec Feinberg* (signature)

Alec Feinberg, Ph.D.
Plaintiff, Pro Se
9510 Centerwood Drive, Raleigh, NC 27617

Phone: 617-943-9034
Email: AlecAFeinberg@gmail.com

## EXHIBITS

### EXHIBITS A – Copyright Registrations
A-1: *The Twelve Marshmallow Martian and Friends* – VAU000296296, 1994-04-08
A-2: *Marshmallow Martian Creatures* – VAu000219808, 12-30-1991
A-3: Copyrighted Drawings of first Marshmallow Martians VAu000219808, 12-30-1991
A-4: *Marshmallow Martians Earthbound* – TXu000362786, 3-24-1989
A-5: *Marshmallow Martian Stories* – TXu000629663, 4-8-1994

### EXHIBIT B — Trademark Registrations
**Exhibits B-1 – B-2:** Active Trademark Registrations
**Exhibit B-3:** Inactive Trademark Registration

### EXHIBIT C — Defendant's Books

### EXHIBIT D — Plaintiff's Books

### EXHIBIT E — Cease-and-Desist Letters and Responses
Summary; Full Correspondence in Exhibit L

### EXHIBIT F — Publication Dates and Target Age Group Comparison

### EXHIBIT G — Character Comparisons to Registered Copyrighted Works
**Exhibit G-1:** Comparison of Plaintiff's "SQUISHY" Character and Defendant's Character
**Exhibit G-2:** Additional Character Comparison
**Exhibits G-3, G-4, G-5, G6** Examples of Non Infringing Marshmallow Aliens

**EXHIBIT H — Origin of the Marshmallow Martians**

**EXHIBIT I — Google AI Results**
**Exhibit I-1** Google AI-Generated Results for "Marshmallow Martian" (April 5, 2026)
**Exhibit I-2** Google AI-Generated Results Referencing MarshmallowMartians.net as having Defendant's Books when this is Plaintiff's Website (April 5, 2026)

**EXHIBITS J — Internet Search Results Confusion**
**Exhibit J-1:** Amazon Search Results for "Marshmallow Martians" (March 16, 2026)
**Exhibit J-2:** Google Search Results for "Marshmallow Martians" Showing Mixed Plaintiff with Defendant Books (Page 1 of Search, April 5, 2026)
**Exhibit J-3:** Google Search Results for "Marshmallow Martian" Showing Defendant Books Only (Pages 2-5, April 5, 2026)

**EXHIBIT K: Video Published on How to Draw SQUISHY by Defendant**

**EXHIBIT L – Cease and Desist Correspondence**
**Exhibit L-1:** Plaintiff's Cease-and-Desist Letter to Defendant (October 4, 2024) — First Page
**Exhibit L–2:** Cease and Desist Correspondence Response (Oct 18, 2024)
**Exhibit L-3:** Plaintiff's Cease-and-Desist Correspondence Providing Copyright Registration Information to Defendant's Counsel (November 25, 2024) — First Page
**Exhibit L-4:** Defendant's Response to Plaintiff's Cease-and-Desist Correspondence (December 13, 2024) — First Page
**Exhibit L-5:** Plaintiff's Follow-Up Cease-and-Desist Correspondence to Defendant (January 8, 2025) — First Page
**Exhibit L-6:** Defendant's Response to Plaintiff's Cease-and-Desist Correspondence (February 4, 2025) — First Page
**Exhibit L-7:** Plaintiff's Cease-and-Desist Correspondence Notifying Defendant of Trademark Renewal (U.S. Serial No. 98/552,512, Class 009) (June 22, 2025)
**Exhibit L-8:** Defendant's Response to Plaintiff's Trademark Notice and Cease-and-Desist Correspondence (June 26, 2025)
**Exhibit L-9:** Plaintiff's Cease-and-Desist Correspondence Notifying Defendant of Trademark Registrations (U.S. Serial Nos. 98/552,512 (Class 009) and 99/044,020 (Class 016)) (November 23, 2025)
**Exhibit L-10:** Defendant's Response to Plaintiff's Cease-and-Desist Correspondence (December 5, 2025)
**Exhibit L-11:** Amazon Email Notification Regarding Reconsideration and Reinstatement of Defendant's Book Listings Following Trademark Complaint (January 27, 2026)